NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JAMES NICHOLSON, PETITIONER, v. HENRY R. EISEN-
BERG, RESPONDENT.

Decided June 8, 1940.

For the petitioner, *J. Edward Bennett.*

For the respondent, *George E. Meredith.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

The petitioner testified that in the year 1934 he made an arrangement with Mr. Henry R. Eisenberg, now deceased, to work for the respondent at the rate of $5 per week, and with the privilege of sleeping in the basement of the office building. He stated that he was instructed to care for the fires, watch the premises and do odd jobs in connection with the business of the respondent. He testified that he slept on the premises every night without exception since that time and that he received his pay of $5 on "pay day" which he fixed as Saturday, and said that he got his money in cash at the same time that the other employes of the company were paid.

The petitioner further testified that on the night of December 7th or 8th, 1938, he went to bed at nine o'clock in the evening and on a davenport which had been provided by a fellow worker and which had been placed near the furnace. He testified that he did not know what happened or how he

got hurt, but that he found that his hand was burned when he awoke in the morning. When pressed for an explanation he stated again that he did not know how his hand got burned, but he "figured it must have stayed there and cooked all night."

The petitioner presented a witness who could shed no light on the accident or the cause of the petitioner's burned hand, but he did say that he had seen the petitioner fix the fires on previous occasions, and also testified that he had helped the petitioner carry out ashes. This witness, however, admitted that he got no pay for carrying out the ashes. The petitioner also produced his sister, who testified that she had previously been down in the cellar and had seen the petitioner tending the furnace and that on one or two occasions when her brother was sick she got his pay.

Opposed to this the respondent produced three witnesses all of whom denied the petitioner's contention that he was an employe. Their testimony indicated that the petitioner was a free lance car cleaner, and that he would wipe off the cars of some of the employes of the respondent for which he was paid amounts varying from ten cents to fifty cents, and that he also cleaned cars for others in the neighborhood. It was also established through these witnesses that the petitioner was allowed to sleep in the cellar as a matter of grace and entirely because of the charitable nature of the elder Mr. Eisenberg, now deceased, and further, that the petitioner did not always sleep in the cellar. It was shown also that on several previous occasions the truck driver, whose duty it was to fix the furnace, found the petitioner in the cellar in a drunken state when the witness came there in the morning to fix the fires.

These witnesses further stated that on the morning in question they went down to the cellar and found the petitioner lying in a stupified condition, and both from his speech and from his actions they concluded that the petitioner was intoxicated.

The respondent also produced a payroll record of the firm which listed a number of employes and a separate social security record. The petitioner did not appear as an employe

on either of these records. Further, it was shown through these witnesses that the usual pay day at the plant of the respondent was Friday night and not Saturday noon, and they testified also that the petitioner was not paid a regular weekly wage of $5 as he claimed.

\*       \*       \*       \*       \*   °   \*       \*

I have carefully considered the testimony and from the more credible facts adduced I find that the petitioner was not in the employ of the respondent. It appears from the testimony that the petitioner had no steady job and that he needed a home and that Mr. Eisenberg out of the goodness of his heart allowed the petitioner to stay on the premises when he felt like it and gave him an opportunity to make odd amounts either by cleaning cars or doing occasional jobs as they arose. However, this work was neither regular, periodic nor recurring. *R. S.* 34:15-36; *N. J. S. A.* 34:15-36. It might be described as a hit or miss proposition. It appears, too, that the payments which the petitioner received when he did do an occasional job were paid not on the basis of an hourly wage, but the allowance was controlled in a large measure by the charitable mood at the moment of the respondent and his employes. Sometimes money was even paid when no services of any character were rendered.

Even if I were to conclude that the petitioner was an employe, it is impossible from the evidence to make a finding that the accident arose out of and in the course of the petitioner's employment. At the time of the alleged accident the petitioner was merely satisfying his own convenience and comfort, and it is even difficult if not impossible from the testimony to determine how the accident happened. If I were asked to determine from the evidence how the petitioner got on the floor or how he burned his hand, my answer would have to be that I do not know. This is so, because the petitioner himself in his testimony stated that he did not know how his hand got burned. The lay witnesses who were called on his behalf shed no light whatever on this aspect of the case.

Having reached this conclusion, it becomes unnecessary to pass on the other grounds raised by the respondent.

In view of the foregoing, it is, therefore * * * ordered that the petition be and the same is hereby dismissed, without cost to either party.

" HARRY S. MEDINETS,
*Deputy Commissioner.*